UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
J.R.J. ENTERPRISES, INC.,

                Plaintiff,

    -against-

M/V CAP ORTEGAL, her engines, boilers,
etc., and COMPANIA SUD AMERICANA
DE VAPORES, S.A.,

                Defendants.
---------------------------------X

07 CIV 6457 (LAP)

DECLARATION
PURSUANT TO LOCAL
RULE 56.1

I, Joseph R. Tagliareni, hereby declare as follows:

I am the Director of Risk Management, CSAV Regional Office of North America, agents for defendant COMPANIA SUD AMERICANA DE VAPORES, S.A. (CSAV). As such, I am familiar, based upon my personal knowledge and my review of the file maintained by my office, with the pleadings and proceedings in this case. I submit the following statement of facts as to which there is no material issue.

    2.    Herewith attached are true copies of the following:

        Exhibit A:    Plaintiff's Complaint;

        Exhibit B:    CSAV's Answer and Counter-Claim;

        Exhibit C:    Bill of lading for the cargo which is the subject of plaintiff's claim;

        Exhibit D:    Plaintiff's Survey Report;

        Exhibit E:    CSAV's Expert Opinion;

1

| | |
|---|---|
| Exhibit F: | Temperature records for the subject container; |
| Exhibit G: | Ventilation records for the subject container; |
| Exhibit H: | CSAV's statement of account for plaintiff as of the time the complaint was filed; |
| Exhibit I: | Letter from plaintiff with respect to the balance owing; and |
| Exhibit J: | Transcript from deposition testimony of plaintiff, by Jimmy Machuca. |

3. Plaintiff seeks money damages for alleged premature ripening of a shipper-stuffed-and-sealed container-load of plantains carried pursuant to a CSAV port-to-port bill of lading from Cartagena, Colombia to the Port of New York aboard the M/V CAP ORTEGAL. (Complaint, Exhibit A; Bill of Lading, Exhibit C).

4. The shipper delivered the container to CSAV at the port of loading on or about July 11, 2006. (Bill of Lading, Exhibit D).

5. No actual evidence has been presented as to the condition of, or the care that was afforded to, the cargo prior to loading. (Machuca Deposition, Exhibit J, at 37 ("Q Just to be clear, do you have any personal knowledge, any personal knowledge, about the condition of the plantains,

the care that was afforded the plantains before they were loaded? A No."); Plaintiff's Survey Report, Exhibit D, at 3 ("No complaint of condition and/or information and/or documents detailing the condition of the cargo at the time of loading into the original trailer has been seen by us.")).

6. However, the CSAV bill of lading called for the cargo to be carried at 7.2° Centigrade, with a ventilation setting of 50%. (Bill of Lading, Exhibit C). And the bill of lading provided that "[t]he Merchant agrees that when a temperature is noted on the face hereof . . . the Carrier will exercise reasonable care to maintain the ambient temperature in the refrigerated chamber of container plus or minus 2°C." Id. at ¶ 12.

7. The data retrieved from the reefer unit and the ventilation settings confirm that the shipper's requested carrying temperature and ventilation percentage were maintained throughout the period of CSAV's custody of the cargo. (Expert Opinion, Exhibit E, at 5 ("[T]he DAT and RAT during ocean transit were within normal parameter and do not suggest mal-function and/or interruptions."); Reefer Data, Exhibit F; Ventilation Settings, Exhibit G; Plaintiff's

3

Survey Report, Exhibit D, at 2-3 ("Mr. Machuca stated that the refrigeration unit was running at the time of delivery. The requested shipping temperature was 7.2°C (45°F) and the set temperature on the refrigeration unit was 7.2°C (45°F) centigrade [sic.]. An actual temperature of the unit interior was not taken, but reportedly felt similar to other shipments (45°F)."; accord Machuca Deposition, Exhibit J, at 77-78).

8. The vessel arrived at Newark on July 18, 2006 (Plaintiff's Survey Report, Exhibit D, at 1-2). This was well within the expected length of time for such a voyage. (Machuca Deposition, Exhibit J, at 48 ("Q How long, generally, is the trip from Cartagena to the Port of New York? MR. McCONNELL: Listen to the question, please. A Eight to ten days.").

9. Plaintiff's trucker then delivered the container to plaintiff's facility on July 20, 2006. (Plaintiff's Survey Report, Exhibit D, at 1-2). "J.R.J. signed for a full container load, no exceptions." (Plaintiff's Survey Report, Exhibit D, at 2; Machuca Deposition, Exhibit J, at 70).

4

10. But plaintiff's witness, Mr. Machuca, subsequently testified that he noticed that the plantains were not green and faxed a notice of claim to CSAV the next day. (Machuca Deposition, Exhibit J, at 56-58). However, the undersigned can unequivocally aver that no such notice was ever received by CSAV before this lawsuit. It is notable, moreover, that plaintiff could not produce a transmission report for this purported fax. Id.

11. In any event, on July 20, 2006, Mr. Machuca actually turned off the electricity for the container so that the temperature could rise. (Machuca Deposition, Exhibit J, at 70 ("Q And it was summertime, right? A Yes."); id. at 67 ("Q but from 1600 hours on July 20 it wasn't hooked up? A Once I saw the product turning ripe, just raised the temperature so I could sell them as ripe plantains.")). The empty container was then returned, and the cargo was left on the asphalt tarmac. Id. at 78.

12. It was there that the cargo which had not already been sold was found by plaintiff's surveyor. (Plaintiff's Survey Report, Exhibit D, at 3). Remarkably, plaintiff's survey was not even requested until August 3, 2006, more than two weeks after the cargo was discharged from the

vessel, and after the cargo had been removed from the container and subjected to 90 temperatures by Mr. Machuca. (Plaintiff's Survey Report, Exhibit D, at 1; Machuca Deposition, Exhibit J, at 81 ("Q How far did you increase the temperature to? A Probably I brought it up to 90, 88, now."); id. at 92 ("Q When did you request the survey? . . . August 3rd. It says August 3rd, 2006. Q Why didn't you request the survey sooner? A I don't know.").

13. Needless to say, plaintiff's surveyor was apparently unaware of these circumstances, and had also not reviewed the reefer data, when, in an entirely conclusory fashion, he opined that, "[b]ased on the information gathered and conditions found it is our opinion that the plantains were subjected to temperatures higher than the requested temperatures while in the care and custody of the ocean carrier." (Plaintiff's Survey Report, Exhibit D, at 3).

14. But, again, the above notwithstanding, the digitally recorded temperature data downloaded from reefer containers is unassailably quantitative. And it proves beyond cavil that CSAV fulfilled its contract with the plaintiff in this case.

6

15. On the matter of CSAV's counter-claim, little need be said. Plaintiff has acknowledged owing to CSAV $4,360 in outstanding ocean freight. As to another $4,360 invoice, Mr. Machuca stated "I am pretty sure that there is only one open invoice but I [sic.] will check and confirm." (Letter dated February 11, 2008, Exhibit I). At deposition on May 8, 2008, though insisting it must have been paid, Mr. Machuca still had no such confirmation. (Machuca Deposition, Exhibit J, at 99 ("A Well, I moved my warehouse and all my paperwork is all over the place. I am still checking."). And no other excuse has been put forward to explain plaintiff's failure to pay the freight. Id. at 100 ("Q But aside from your belief that you may have paid one of those payments, is there any reason why the freight would not be paid on these bills of lading? A No.").

16. For the purpose of this motion, and in the interest of quickly resolving this matter, CSAV has accepted that plaintiff may be entitled to a $200 "VIP" deduction on each freight invoice, bringing the total owed to CSAV, exclusive of interest, to $8,720. But, again, Your Declarant can, without question, attest that payment has not been received on either invoice. That non-receipt shows

clearly on CSAV's Statement of Account. If it had been paid, moreover, plaintiff's bank records would have been produced in response to CSAV's repeated demands.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 24, 2008
Isalin, New Jersey

By: _____
Joseph R. Tagliareni