**SHIPPER (NAME AND FULL ADDRESS)**
C.I. RAMZY COLOMBIA S.U.
NIT. 900,067,225-2
CARRERA 43A No. 27ASUR -86 OFICINA 22
CENTRO EJECUTIVO LA CASONA
ENVIGADO - ANTIOQUIA
COLOMBIA

**BOOKING NBR:** CHIWX1HC001461
**SERVICE:** LNAM
**B/L NUMBER:** CHIWX1C037214

**EXPORT REFERENCES**

**CONSIGNEE (NAME AND FULL ADDRESS)**
JRJ. ENTERPRISES INC
JIMMY MACHUCA
17 VOORHIS LANE HACKENSACK N.J. 07601
PHONE 2019680141
FAX 2019680142
jrjinc2000@aol.com

NOT NEGOTIABLE UNLESS "TO ORDER OF"

**FORWARDING AGENT - REFERENCES (NAME AND FULL ADDRESS / F.M.C.)**

**NOTIFY (NAME AND FULL ADDRESS)**
JRJ. ENTERPRISES INC
JIMMY MACHUCA
17 VOORHIS LANE HACKENSACK N.J. 07601
PHONE 2019680141
FAX 2019680142
jrjinc2000@aol.com

**POINT AND COUNTRY OF ORIGIN OF GOODS**

**DOMESTIC ROUTING / EXPORT INSTRUCTIONS / ONWARD INLAND ROUTING**
COCTG-USNYC BDI-CAP ORTEGAL/00048/N

| PRECARRIAGE BY (Mode) (*) | PLACE OF RECEIPT BY PRECARRIER (*) |
|---|---|
| | CARTAGENA, COLOMBIA |
| **PORT OF LOADING** | **OCEAN VESSEL (Vessel/voyage/flag)** |
| Cartagena, Colombia | CAP ORTEGAL/00048/N |
| **PORT OF DISCHARGE** | **PLACE OF FINAL DELIVERY BY ONCARRIER (*)** |
| New York (New York), USA | NEW YORK (NEW YORK), USA |

## PARTICULARS FURNISHED BY SHIPPER - CARRIER NOT RESPONSIBLE

| MARKS AND NUMBERS | Nº OF PKGS./CNTRS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| GESU9180016<br>SN:83697X<br>QTY:1017<br>CY / CY<br>FCL/FCL<br>TW:5,000.000KGS<br>GW:24,200.000KGS | 1 | HIGH REEFER 40' CONTAINER<br>SHIPPER'S LOAD AND COUNT<br><br>1016 CARTON BOXES OF GREEN PLANTAINS AND 1 CARTON BOX WITH 15 GREEN PLANTAINS PEELED VACUUM PACKED<br><br>GROSS WEIGHT:24,200 KG<br><br>TEMPERATURE ...°C<br>VENTILATION 30%<br><br>NO WOOD PACKING MATERIAL Y EL FDA NUMBER 15150274222.<br>FREIGHT COLLECT<br>SC:US-CHIW-06-0629-C0381US | 24,200.000KGS | |

Copy Not Negotiable
"CLAUSES AND SPECIFIC CONDITIONS IN ORIGINAL BILL OF LADING"

Service Coverage CONTAINER YARD in CARTAGENA, COLOMBIA CONTAINER YARD in NEW YORK (NEW YORK), USA CN/:CHI

Continued on Appendix to BL Nr CHIWX1C037214

SHIPPERS DECLARED VALUE $ (IF NOT DECLARED, LIABILITY LIMIT APPLIES AS PER CLAUSE 16.):

**TOTAL No. OF CONTAINERS OR PACKAGES RECEIVED BY THE CARRIER :**

The number of containers or packages shown in the "TOTAL Nº OF CONTAINERS OR PACKAGES RECEIVED BY THE CARRIER" box which are said by the Shipper to hold or consolidate the Goods described in the "PARTICULARS FURNISHED BY SHIPPER - CARRIER NOT RESPONSIBLE" box have been received by COMPAÑIA SUD AMERICANA DE VAPORES S.A. from the Shipper in apparent good order and condition except as otherwise indicated hereon - weight, measure, marks, numbers quality, quantity, description, contents and value unknown - for Carriage from the Place of Receipt or the Port of Loading (whichever is applicable) to the Port of Discharge or the Place of Delivery (whichever is applicable) on the terms and conditions hereof INCLUDING THE TERMS AND CONDITIONS ON THE REVERSE SIDE HEREOF, THE CARRIER'S APPLICABLE TARIFF AND THE TERMS AND CONDITIONS OF THE PRECARRIER AND ONCARRIER AS APPLICABLE IN ACCORDANCE WITH THE TERMS AND CONDITIONS ON THE REVERSE SIDE HEREOF.

IN WITNESS WHEREOF THREE (3) ORIGINAL BILLS OF LADING (unless otherwise stated above) HAVE BEEN SIGNED ALL OF THE SAME TENOR AND DATE, ONE OF WHICH BEING ACCOMPLISHED THE OTHERS TO STAND VOID.

| FREIGHT CHARGES | RATE | PREPAID | COLLECT | PAYABLE AT |
|---|---|---|---|---|
| AS PER AGREEMENT | | | | |

COMPAÑIA SUD AMERICANA DE VAPORES S.A.
as Carrier

Place issued: New Jersey (New Jersey), USA
Date issued: 7/11/2006

(*) Applicable only when used as intermodal Bill of Lading (see clause 10 on the reverse hereof)

SHEET : 1 of 2



Appendix to Bill of Lading Number : CHIWX1C037214 issued at New Jersey (New Jersey), USA , Date 7/11/2006

SHIPPER, LOAD, COUNT AND SEALED
SHIPPER'S LOAD, STOW, COUNT AND SEALED
SCALES NOT AVAILABLE
SHIPPER S COUNT AND WEIGHT
CLEAN SHIPPED ON BOARD

****************************************** END OF BILL OF LADING ******************************************

Copy Not Negotiable
"CLAUSES AND SPECIFIC CONDITIONS IN ORIGINAL BILL OF LADING"

COMPAÑIA SUD AMERICANA DE VAPORES S.A.
as Carrier

HEAD OFFICES: Plaza Sotomayor 50, Valparaiso, Chile - Hendaya 60 Piso 12, Santiago, Chile.

1. DEFINITIONS

"Carrier" means Compania Sud Americana de Vapores S.A. (referred to herein as CSAV).

"Precarrier" and "Oncarrier" shall include any carrier by land, water or air, which participates in the intermodal transportation of Goods moving under this Bill of Lading from the Place of Receipt to the Port of Loading in the case of the Precarrier and from the Port of Discharge to the Place of Final Delivery in the case of the Oncarrier.

"Merchant" includes the shipper, holder, consignee, receiver of the Goods, any person owning or entitled to the possession of the Goods or of this Bill of Lading and anyone acting on behalf of any such person.

"Goods" means the whole or part of the cargo received from the shipper and includes any container, trailer, transportable tank, flat or pallet or any similar article used to consolidate the Goods.

"Carriage" means the whole of the operations and services undertaken by the Carrier in respect of the Goods.

"Vessel" means the Vessel on which it is proposed that the Goods shall be carried during all or part of their carriage between the Port of Loading and the Port of Discharge. This term shall include any alternative or substitute vessel to the Vessel named on this Bill of Lading.

"Freight" includes all charges payable to the Carrier in accordance with the applicable tariff, charter party contract of affreightment and this Bill of Lading.

"On board" or similar words endorsed on this Bill of Lading means that the Goods have been loaded on the Vessel or in the event of intermodal transportation, if the originating Precarrier is an inland carrier, means that the Goods have been loaded on railcars or other means of inland transportation and are in the custody of a railroad or other Precarrier.

"Package" includes containers, vans, trailers, pallets and unitised Goods or things of any description whatsoever having packaging excluding Goods shipped in bulk or Goods not shipped in packages.

"Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25 August 1924 or any national legislation making such Rules compulsorily applicable to this Bill of Lading.

"Hague Visby Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25 August 1924 as amended by the Protocol signed at Brussels on 23 February 1968 or any national legislation making such Rules as amended compulsorily applicable to this Bill of Lading.

"Hamburg Rules" means the provisions of the United Nations Convention on the Carriage of Goods by Sea 1978 adopted at Hamburg on 31 March 1978 or any national legislation giving compulsory effect to such Rules in respect of this Bill of Lading and "national legislation" in the case of Chile, shall mean the provisions of the said Convention and Title V of Book Third of the Chilean Code of Commerce.

The interested parties (Carrier, Merchant, Vessel, Shipper, Consignee) express their will and accept, together with the remaining clauses of this Bill of Lading, the following: (1) that any alteration of the Bill of Lading requires a written agreement, without prejudice to the Chilean Customs regulations; and (2) if in the cases to which the Hamburg Rules are compulsorily applicable, there is proof that the Carrier, his servants or agents adopted all the means which could reasonably be expected to avoid the occurrence and its consequences, the Carrier shall not be liable for the loss, damage or delay resulting from or arising out of any of the circumstances established in Rule 2 of Article 4 of the Hague Visby Rules, save the ones contained in letters a), b) and q). In the same aforementioned cases, the agreed freight comprises the Carriage from the "Point of Reception" of the Goods at the Port of Loading to the "Point of Delivery" of same, at the Port of Discharge, including loading and discharge operations for account of the Carrier.

**2. CLAUSE PARAMOUNT. -** (1) Save where the English Carriage of Goods by Sea Act 1971 applies the Hague Visby Rules compulsorily to this Bill of Lading, in which event this Bill of Lading shall be subject to the Hague Visby Rules, the Hague Rules shall apply and the Carrier shall be entitled to the benefit of all privileges, rights and immunities contained in Articles I to VIII of the Hague Rules, save that notwithstanding the provisions of Article IV Rule 5 of the Hague Rules, the limitation sum for the purpose of Article IV Rule 5 of the Hague Rules shall be £100 pounds sterling.

(2) Notwithstanding Clause 2(1) above, for shipments to and from the United States, this Bill of Lading shall be deemed to incorporate and shall have effect, subject to the provisions of the United States Carriage of Goods by Sea Act ("COGSA") approved April 16, 1936 and nothing herein nor contained in the said Act shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities thereunder, nor shall the Carrier be deemed to have warranted the seaworthiness of the Vessel. The provisions stated in COGSA shall govern the Goods before they are loaded on and after they are discharged from the Vessel and throughout the entire time that they are in the custody of the Carrier at a United States port. The Carrier shall also have the benefit of Sections 181 to 189, inclusive of title 46 US Code and the benefits of Sections 4281 to 4286 inclusive and Section 4289 of the United States Revised Statutes, as amended, the same as if it were the owner of the Vessel or other water craft used to transport the Goods.

(3) Notwithstanding Clauses 2(1) and 2(2) above, if this Bill of Lading is subject to legislation which makes the Hamburg Rules compulsorily applicable to it, then this Bill of Lading shall have effect subject to the Hamburg Rules, which shall nullify any stipulation derogating therefrom to the detriment of the shipper or consignee. If the Hamburg Rules are compulsorily applicable to this Bill of Lading by reason of the aforesaid, it is hereby agreed that the date of delivery of the Goods shall be six (6) months from the date of shipment.

**3. INCORPORATION OF TARIFF.-** The terms of the Carrier's applicable tariffs are incorporated herein. Particular attention is drawn to the terms thereof relating to container and vehicle demurrage. Copies of relevant provisions of the applicable tariff are obtainable from the Carrier or its agents upon request. In the case of inconsistency between this Bill of Lading and the applicable tariff, this Bill of Lading shall prevail.

**4. SCOPE OF VOYAGE.-** The scope of the voyage herein contracted for shall include usual or customary or advertised ports of call whether named in this contract or not, ports in or out of the advertised, geographical, usual or ordinary route or order, even though in proceeding thereto the Vessel may sail beyond the Port of Discharge or in a direction contrary thereto, or depart from the direct or customary route. The Vessel may call at any port for any purpose whatsoever and whether or not connected with the Carriage of the Goods, including loading and unloading other goods and/or for the purpose of the current voyage or of a prior or subsequent voyage, omit calling at any port or ports more than once, adjust equipment, drydock, go on ways or repair yards, shift berths, take fuel or stores, remain in port, sail with or without pilots, tow and be towed, and save or attempt to save life or property. [illegible]

**5. GOVERNMENT ORDERS.-** [illegible]

**6. SUB-CONTRACTING AND BENEFICIARIES OF CONTRACT.-** [illegible]

**7. IDENTITY OF CARRIER.-** [illegible]

**8. LIBERTIES.-** [illegible]

**9. CARRIERS RESPONSIBILITY PORT-TO-PORT SHIPMENTS, TRANSSHIPMENTS.-** [illegible]

**10. CARRIERS RESPONSIBILITY: INTERMODAL SHIPMENTS; TARIFFS: -** [illegible]

**11. DESCRIPTION, MARKINGS, WEIGHTS AND MERCHANT S RESPONSIBILITY.-** [illegible]

**12. SPECIAL, CONTAINERIZED AND PERISHABLE GOODS: REFRIGERATION.-** [illegible] on the face hereof that the Goods will be carried in refrigerated or heated or ventilated spaces or containers. The Merchant undertakes not to tender for transportation Goods which require refrigeration, ventilation, heating and the like without giving prior written notice of their nature prior to receipt by the Carrier with specific instructions as to temperature, ventilation, heating and the like.

Unless a special agreement is made and inserted in this Bill of Lading the Carrier does not undertake and shall not be liable for failure to give the Goods, whether or not of a perishable or special nature, any unusual or special care, handling, storage or facilities not given ordinary nonperishable, general Goods, nor will it discharge or deliver the Goods into or to any refrigerated, chilled, cooled, ventilated, insulated, heated, drained, dry, moist, or specially equipped place, compartment, container or other facility and the Merchant represents and warrants the Goods do not require any such special care or facilities.

If perishable Goods requiring special temperature are delivered to the Carrier in a refrigerated container, the Merchant undertakes that the Goods have the temperature provided on the face hereof and that they have been properly stowed and the thermostatic controls have been properly set by him before delivery of the Goods to the Carrier.

The Merchant agrees that when a temperature is noted on the face hereof or if not noted and the ambient temperature for the carriage of the perishable commodity is known or recognized for ocean transportation of said perishable commodity, the Carrier will exercise reasonable care to maintain the ambient temperature in the refrigerated chamber or container plus or minus 2°C.

In no event shall the Carrier be liable in any respect because heating, refrigeration or special cooling facilities are not furnished during loading, discharge or any part of the time that the Goods are on a dock, wharf, craft, or other loading or discharging place, and the Carrier does not undertake to furnish such facilities.

The Carrier shall be under no responsibility whatsoever for loss of and/or damage to Goods arising out of defect, malfunction or irregularity of a container (whether a Merchant supplied container or not) unless such loss and/or damage arises out of causes for which the Carrier would otherwise be liable under this Bill of Lading.

**13. GENERAL AVERAGE.-** General Average shall be adjusted, stated and settled according to the York/Antwerp Rules of 1994 or any subsequent modification thereof, at any port or place as selected by the Carrier and as to matters not provided for by these Rules, according to the laws and usages at the port of New York. Anything in this Bill of Lading to the contrary notwithstanding, the cost of handling on board, restowing, reloading, discharging Goods or containers, fuel or stores, whether at port or place of loading, call or refuge, shall be admitted as General Average when the handling or discharge was necessary for the common safety or to enable the vessel to be repaired and/or remedied, if the repairs or restowage were necessary for the safe prosecution of the voyage.

In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which the Carrier is not responsible by statute, contract or otherwise, the Goods and the Merchant jointly and severally, shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the Goods. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or ships belonged to strangers. Security including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage or special charges thereof shall, if required, be submitted to the Carrier prior to delivery of the Goods. The Carrier shall be under no obligation to exercise any lien for General Average contribution due to the Merchant.

**14. BOTH-TO-BLAME COLLISIONS.-** If the Vessel comes into collision with another ship as a result of the negligence of the other ship and/or any act, neglect or default of the Master, mariner, pilot or the servants of the Carrier in the navigation or the management of the Vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of or damage to, or any claim whatsoever of the Merchant, paid or payable by the other or non carrying ship or her owners to the Merchant and set-off, recouped or recovered by the other or non carrying ship or her owners as part of their claim against the carrying Vessel or Carrier.

The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.

**15. FREIGHT.-** Full freight to the Port of Discharge or Place of Final Delivery as the case may be including but not limited to freight, inland freight or additional freight, deadfreight, demurrage, charges and all other amounts due herein against the Goods shall be deemed fully earned on receipt of the Goods by the Carrier (whether intended to be prepaid or to be collect at the Port of Discharge or Place of Final Delivery or subsequently) and shall be paid and non returnable in any event under all circumstances whatever Vessel and/or Goods lost or not lost, or the voyage changed, frustrated or abandoned.

Freight may be calculated on the basis of particulars of the Goods furnished by or on behalf of the Merchant, but the Carrier shall be entitled at any time to weigh, measure and value the Goods, and may (but without any obligation) open Packages, containers or trailers to examine contents. If the particulars furnished by or on behalf of the Merchant are incorrect or there is an error in freight or other charges and if on correction the freight or charges should be higher, the Carrier may collect the additional amount and the Merchant shall be liable for any expense incurred in examining, weighing, measuring and valuing the Goods.

All Freight, charges or sums of whatsoever nature payable to the Carrier are due from all persons defined as the Merchant (who shall be jointly and severally liable to the Carrier therefor) and shall be paid in full, without any set-off, counter-claim or deduction in the currency named in this Bill of Lading or, at Carrier's option, in other currency.

Any person, firm or corporation engaged to perform forwarding services with respect to the Goods shall be considered the exclusive agent of the Merchant for all purposes and any payment of freight to such person, firm or corporation shall not be considered payment to the Carrier in any event. Failure of such person, firm or corporation to pay any part of the freight to the Carrier shall be considered a default by the Merchant in the payment of the freight.

**16. VALUATION.-** If COGSA applies, neither the Carrier nor the Vessel shall in any event be or become liable for any loss or damage to or in connection with the transportation of Goods in an amount exceeding $500 per package lawful money of the United States, or in case of Goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of the Goods have been declared by the shipper before shipment and inserted on the face of this Bill of Lading in the box SHIPPERS DECLARED VALUE and extra freight charges paid. Charges for excess value declaration shall apply as per Carrier's tariff.

If this Bill of Lading shall be subject to either the Hague Rules or the Hague Visby Rules, the Carrier's and Vessel's liability shall be limited to either 100 pounds sterling per package or unit or per the limitations set forth in the Hague Visby Rules, unless the nature and value of such Goods shall have been declared by the shipper and inserted on the face of this Bill of Lading in the box SHIPPERS DECLARED VALUE and extra charges paid.

In the event of a higher value being declared by the shipper in writing and inserted herein and extra freight being paid thereon, the Carrier's liability if any, for loss or damage to or in connection with the Goods shall be determined on the basis of such declared value and pro rata of such declared value in the case of partial loss or damage, provided such declared value does not exceed the actual value of the Goods.

In no event shall the Carrier be liable for more than loss or damage actually sustained. The Carrier shall not be liable for delay or for any consequential or special damages and shall have the option of replacing any lost Goods and/or replacing or repairing any damaged Goods.

If this Bill of Lading shall be subject to the Hamburg Rules, the Carrier's and Vessel's liability shall be in accordance with Article 6 thereof and limited to 835 SDRs per package or other shipping units or 2.5 SDRs per Kilogram of gross weight of the goods lost or damaged, whichever is higher.

**17. LIEN.-** The Carrier shall have a lien on the Goods and any documents for all sums payable to the Carrier from the Merchant under this Bill of Lading, including, without limitation all freight, inland freight, additional freight, dead freight, advances, general average contributions, demurrage, fines, taxes, damages, expenses and charges becoming due under this Bill of Lading or which may be sustained or incurred by the Carrier, whether they are payable in advance or not. Any lien shall extend to the cost of recovering the sums due including the cost, expenses and legal fees of exercising such lien. Such lien shall not be lost by delivery of the Goods, and it may be enforced by public or private sale in any manner at the Carrier's discretion, without notice to the Merchant.

**18. NOTICE OF LOSS OR DAMAGE, TIME BAR.-** Unless notice of loss or damage and the general nature of such loss or damage is given in writing to the Carrier or his agent at the Port of Discharge or Place of Final Delivery as the case may be before or at the time of the removal of the Goods into the custody of the Merchant or if the loss or damage is not apparent, within three days after delivery, such removal shall be prima facie evidence of the delivery by the Carrier of the Goods as described in this Bill of Lading. Any claim against the Carrier for any adjustment, refund of or with respect to freight, charges or expenses or any claim other than for loss or damage to Goods must be given to the Carrier or its agent in writing within 20 days from the day when the Goods were or should have been delivered.

Claims for loss and/or damage to the Goods occurring while in the possession of a Precarrier and/or Oncarrier is subject to the claims filing, notice and time for suit requirements provided for in the tariff and/or terms and conditions governing that Precarrier's or Oncarrier's transportation. The Merchant should note that such terms and conditions may prescribe periods within which notice must be given, claims must be filed or suits must be commenced which are either longer or shorter than that which governs claims against the Carrier.

Notice of loss or damage in respect of perishable Goods must be given to the Carrier within 24 hours after delivery by the Carrier failing which it shall be prima facie evidence of the condition of the Goods as described on this Bill of Lading.

In any event, the Carrier and the Vessel shall be discharged from any loss or damage to the Goods or with respect to freight, charges or expenses, or the refund thereof or any claim of whatsoever kind, nature or description, with respect to or in connection with the Goods unless suit is brought within one year of delivery of the Goods or the date when the Goods should have been delivered. If this Bill of Lading shall be subject to the Hamburg Rules, any claim in relation to the Carriage of Goods is time barred if judicial proceedings have not been instituted within a period of two (2) years from the day of delivery of the Goods or from the last day on which the Goods should have been delivered. Suit shall not be considered to have been brought within time specified unless process shall have been actually served and/or jurisdiction obtained over the Vessel or Carrier within such time.

**19. CLAIMS, TIME BAR - INTERMODAL SHIPMENTS.-** Claims for loss or damage to Goods must be filed against the Carrier, which agrees to be solely responsible for processing said claims to conclusion. In the event of payment of any such claims by the Carrier it shall automatically be subrogated to all rights of the Merchant against all others including Precarriers and/or Oncarriers on account of such loss or damage. Claims must be filed and suit commenced within the time limit provided by law and the terms of the bills of lading and or contracts of carriage and/or transport documents and/or the tariffs of the carriers which had or are deemed in accordance with this Bill of Lading to have had custody of the Goods when the loss or damage occurred. When it cannot be established which carrier hereunder had custody or control of the Goods at the time of loss or damage it shall be deemed that the loss or damage occurred aboard the Vessel while in the custody or control of the Carrier.

Claims for loss and/or damage to the Goods occurring while in the possession of a Precarrier and/or Oncarrier shall be made in writing against CSAV within nine months after delivery of the Goods by such Precarrier and/or Oncarrier or in the case of failure to make delivery then within nine months from the date when the Goods should have been delivered.

The liability of CSAV shall be no greater than that of the Precarrier and/or Oncarrier including all benefits, exemptions, defences and limits whatsoever of the Precarrier and/or Oncarrier provided by applicable law and its bills of lading and/or tariffs and/or contract of carriage and/or transport documents which CSAV shall be entitled to invoke. PROVIDED ALWAYS that the liability of CSAV shall under no circumstances exceed the limitation of liability provided for in respect of sea transport as set forth in Clause 16 hereof.

Notice of claim should be sent to CSAV at the address set forth above.

**20. DISCHARGE AND DELIVERY, DELIVERY BY MARKS.-** The Port Authorities are hereby authorised to grant a general order for discharging immediately after the arrival of the Vessel. The Vessel may commence discharging immediately on arrival and discharge continuously day and night, Sunday and holidays included any customs of the port to the contrary notwithstanding.

At ports and places of discharge where the Carrier is required to discharge Goods into lighters or other craft by local law, local authorities or local custom, or where it has been so agreed or where piers and wharfs which the Vessel can reach, lie at or depart from always afloat are not available or where prevailing conditions at the time render discharge to a pier or wharf dangerous or imprudent or would subject the Vessel, Goods and cargo of others to abnormal delay, the Merchant shall be required to furnish lighters or other craft and take delivery alongside the vessel in such lighters or craft from the Vessel's tackle at the risk and expense of the Goods. In such cases if the Merchant fails or refuses to provide lighters or other craft, the Carrier acting as agent for the Merchant may engage lighters or craft for the risk and account of the Goods and upon discharge of the Goods into such lighters or craft, performance hereunder and delivery of the Goods shall be completed and the Carrier shall not be under any further responsibility with respect to the Goods.

The Carrier shall not be liable for failure to deliver in accordance with leading marks unless such marks shall have been clearly and durably stamped or marked by the Merchant before shipment of the Goods in such a manner as to clearly identify such Goods and their port of discharge. Goods that cannot be identified as to marks and any unclaimed Goods not otherwise accounted for may at Carrier's option be allocated for completing delivery to the various consignees of Goods of like character in proportion to any apparent shortage.

**21. STOWAGE UNDER AND ON DECK. LIVE ANIMALS.-** (1) The Carrier shall have the right to stuff Goods in containers and consolidate them with other Goods and containers.

(2) Goods, whether or not carried in containers, may be carried on deck or under deck without notice to the Merchant or any notation on the face hereof and all such Goods (including goods stowed in poop, forecastle, deck house, passenger spaces, state rooms or any other covered space) whether carried on deck or under deck shall participate in General Average and shall, save as provided in Clause 21(3) below, be deemed to be within the definition of Goods for the purposes of the Hague Rules, Hague Visby Rules and COGSA and shall be carried subject to the provisions of Clause 2 of this Bill of Lading.

(3) In the case of Goods which are stated on the face hereof as being carried on deck and which are so carried and live animals, the Hague Rules, the Hague Visby Rules and COGSA shall not apply and the Carrier shall be under no liability whatsoever for loss, damage or delay howsoever arising.

**22. DANGEROUS GOODS.-** No Goods which are or may become dangerous, inflammable or damaging (including radio-active materials) or which are or may become liable to damage any property whatsoever, shall be tendered to the Carrier for Carriage without its express consent in writing, and without the container (if any) as well as the Goods themselves being distinctly marked on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws, regulations, International Conventions or requirements. If any such Goods are delivered to the Carrier without such written consent and/or marking, or if in the opinion of the Carrier the Goods are or are liable to become of a dangerous, inflammable or damaging nature, they may at any time be destroyed, disposed of, abandoned, or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Freight.

The Merchant undertakes that such Goods are packed in a manner adequate to withstand the risks of Carriage having regard to their nature and in compliance with all laws, regulations, International Conventions or requirements which may be applicable during the Carriage.

Whether or not the Merchant was aware of the nature of the Goods, the Merchant shall indemnify the Carrier against all claims, losses, damages or expenses arising in consequence of the Carriage of such Goods.

Nothing contained in this Clause shall deprive the Carrier of any of its rights or immunities provided for elsewhere.

**23. LAW AND JURISDICTION. -** This Bill of Lading and any claim or dispute arising hereunder shall be subject to English law and the jurisdiction of the English High Court of Justice in London. If, notwithstanding the foregoing, any proceedings are commenced in another jurisdiction, such proceedings shall be referred to ordinary courts of law. In the case of Chile, arbitrators shall not be competent to deal with any such disputes and any proceedings shall be referred to the Chilean Ordinary Courts.

**24. VALIDITY.-** If anything herein contained is invalid under any compulsorily applicable International Convention or National law, the provisions hereof shall to the extent of such invalidity but no further be null and void.

**25. FINAL AGREEMENT.-** All agreements or freight engagements for the shipment of the Goods are superseded by this Bill of Lading and all its terms, whether written, typed, stamped or printed are accepted and agreed to by the Merchant to be binding as fully as if signed by the Merchant, any local customs or privileges to the contrary notwithstanding. Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory protection or exemption from or limitation of liability. This Bill of Lading is in no sense the personal contract of [illegible]