UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
J.R.J. ENTERPRISES, INC.,

                                         07 Civ. 6457 (LAP)

                Plaintiff,


       -against-

M/V CAP ORTEGAL, her engines, boilers,
etc., and COMPANIA SUD AMERICANA
DE VAPORES, S.A.,

                Defendants.
------------------------------------------X




**MEMORANDUM OF LAW
IN SUPPORT OF MOTION**






Garth S. Wolfson (GW 7700)

    Of Counsel



**MAHONEY & KEANE, LLP
Attorneys for Defendant
COMPANIA SUD AMERICANA DE VAPORES, S.A.
11 Hanover Square, Tenth Floor
New York, New York 10005
(212) 385-1422**

# TABLE OF CONTENTS

*Page*

STATEMENT OF FACTS.............................................1

ARGUMENT......................................................1

    PRELIMINARY STATEMENT.....................................1

    POINT I.          PLAINTIFF HAS FAILED TO ESTABLISH THAT
                        THE DAMAGE OCCURRED WHILE THE CARGO WAS
                        IN CSAV'S CUSTODY.........................3

    POINT II.        CSAV HAS ESTABLISHED ITS DUE DILIGENCE
                        AS A MATTER OF LAW........................6

    POINT III.      THE ABOVE NOTWITHSTANDING, JUDGMENT
                        SHOULD BE GRANTED TO CSAV ON ITS
                        COUNTER-CLAIM FOR OUTSTANDING OCEAN
                        FREIGHT...................................9

    CONCLUSION..............................................11

## STATEMENT OF FACTS

For an accurate statement of the pertinent facts established in this matter, the Court is respectfully referred to the Declaration of Joseph R. Tagliareni executed on June 24, 2008.

## ARGUMENT

**PRELIMINARY STATEMENT.**

The Court enjoys subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1333. Plaintiff's claim, as well as the counter-claim, fall under the Court's admiralty and maritime jurisdiction pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, and the federal maritime law governs this action. Norfolk S. Ry. Co. v. Kirby, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004); Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 1995 A.M.C. 913 (1995).

The provisions of the United States Carriage of Goods by Sea Act (COGSA) apply by force of law to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." 46 U.S.C. § 1300. Other claims arising under the bill of lading are preempted by federal law. See, Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc., 896 F.2d 656, 661 (1st Cir. 1990); GFT U.S.A. Corp. v. M/V Export Freedom, 1996 A.M.C. 1882, 1895 (S.D.N.Y. 1996); National Automotive Publications, Inc. v.

United States Lines, Inc., 486 F. Supp. 1094, 1982 A.M.C. 2299, 2304 (S.D.N.Y. 1980); B.F. McKernin & Co. v. United States Lines, Inc., 416 F. Supp. 1068, 1071, 1976 A.M.C. 1527, 1529-30 (S.D.N.Y. 1976).

Under COGSA, the bill of lading constitutes the governing contract of carriage, and the parties to a shipment are bound by the bill of lading's terms. See, Southern Pacific Transp. Co. v. Commercial Metals, 456 U.S. 336, 342-43 (1982) ("[E]ach [term] has in effect the force of statute of which all effected must take notice."); Metropolitan Wholesale Supply, Inc. v. M/V Royal Rainbow, 12 F.3d 58, 61 (5th Cir. 1994); Wemhoener Pressen v. Ceres Marine Terminals, Inc., 5 F.3d 734, 738 (4th Cir. 1993); Hyundai Corp., U.S.A. v. Hull Ins. Proceeds of M/V Vulca, 800 F. Supp. 124, 127 (D.N.J. 1992); see also, United Van Lines Inc. v. Hellman, 949 F. Supp. 126, 129 (E.D.N.Y. 1996) ("It is well-accepted that a bill of lading may not be modified by extrinsic or parol evidence.").

And summary judgment is appropriate, if the record shows, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If the moving party shows an absence of evidence to support the non-moving party's case in this regard, the non-moving party then bears the burden to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 323-25, 106

2

S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  Evidence that is merely colorable or not sufficiently probative will not defeat an otherwise proper motion for summary judgment.  Anderson, 477 U.S. at 249.

Defendant COMPANIA SUD AMERICANA DE VAPORES, S.A. (CSAV) respectfully submits that it is entitled to summary judgment in this case.

**POINT I.        PLAINTIFF HAS FAILED TO ESTABLISH THAT THE DAMAGE OCCURRED WHILE THE CARGO WAS IN CSAV'S CUSTODY.**

"[Plaintiff] has the burden, which remains with it throughout the case, of proving that 'the goods were damaged while in the carrier's custody.'"  See, Caemint Food, Inc. v. Brasiliero, 647 F.2d 347, 351, 1981 A.M.C. 1801, 1807 (2d Cir. 1981) (quoting Pan American Hide Co. v. Nippon Yusen, 13 F.2d 871 (S.D.N.Y. 1921) (L. Hand, J.)); see also, Bally, Inc. v. M.V. Zim Am., 22 F.2d 65, 1994 A.M.C. 2762, 2770 (2d Cir. 1994); Hershey Foods Corp. v. Waterman Steamship Corp., 1994 A.M.C. 2970 (S.D.N.Y. 1994); Rit-Chem Co., Inc. v. S/S Valiant, 743 F. Supp. 232, 1990 A.M.C. 2953 (S.D.N.Y. 1990); A.J. Cunningham Packing Corp. v. M/V Australian Exporter, 719 F. Supp. 258, 1989 A.M.C. 2748 (S.D.N.Y. 1989); The Travelers Indem. Co. v. S/S Sikorski, 716 F. Supp. 1, 1989 A.M.C. 1985 (S.D.N.Y. 1989); Perugina Chocolates & Confections, Inc. v. S/S Ro Ro Geneva, 649 F. Supp. 1235, 1987 A.M.C. 801 (S.D.N.Y. 1986).

3

In the case at bar, by plaintiff's own admission, no actual evidence has been presented as to the condition of, or the care that was afforded to, the cargo prior to loading of the shipper-stuffed-and-sealed container. (Machuca Deposition, Exhibit J to Tagliareni Declaration, at 37 ("Q  Just to be clear, do you have any personal knowledge, any personal knowledge, about the condition of the plantains, the care that was afforded the plantains before they were loaded?  A  No."); Plaintiff's Survey Report, Exhibit D, at 3 ("No complaint of condition and/or information and/or documents detailing the condition of the cargo at the time of loading into the original trailer has been seen by us.")).  Plaintiff has thus failed to meet its COGSA burden of establishing the cargo's good order and condition upon loading.

The vessel arrived at Newark on July 18, 2006 (Plaintiff's Survey Report, Exhibit D to Tagliareni Declaration, at 1-2).  This was well within the expected length of time for such a voyage. (Machuca Deposition, Exhibit J to Tagliareni Declaration, at 48 ("Q  How long, generally, is the trip from Cartagena to the Port of New York?  MR. McCONNELL: Listen to the question, please.  A  Eight to ten days."). And plaintiff's trucker then delivered the container to plaintiff's facility on July 20, 2006. (Plaintiff's Survey Report, Exhibit D to Tagliareni Declaration, at 1-2). "J.R.J. signed for a full container load, no exceptions." (Plaintiff's Survey Report, Exhibit D to Tagliareni Declaration, at 2; Machuca Deposition, Exhibit J to Tagliareni Declaration, at

70).

   Plaintiff's witness, Mr. Machuca, then actually turned off the electricity for the container, allowing the temperature to rise. (Machuca Deposition, Exhibit J to Tagliareni Declaration, at 70 ("Q And it was summertime, right? A Yes."); id. at 67 ("Q But from 1600 hours on July 20 it wasn't hooked up? A Once I saw the product turning ripe, just raised the temperature so I could sell them as ripe plantains.")). The empty container was then returned, and the cargo was left on the asphalt tarmac. Id. at 78.

   It was there that the cargo which had not already been sold was ultimately found and assessed by plaintiff's surveyor. (Plaintiff's Survey Report, Exhibit D to Tagliareni Declaration, at 3). Remarkably, plaintiff's survey was not even requested until August 3, 2006, more than two weeks after the cargo was discharged from the vessel, and after the cargo had been removed from the container and subjected to 90 temperatures by Mr. Machuca. (Plaintiff's Survey Report, Exhibit D to Tagliareni Declaration, at 1; Machuca Deposition, Exhibit J to Tagliareni Declaration, at 81 ("Q How far did you increase the temperature to? A Probably I brought it up to 90, 88, now."); id. at 92 ("Q When did you request the survey? . . . August 3rd. It says August 3rd, 2006. Q Why didn't you request the survey sooner? A I don't know.").

Needless to say, plaintiff's surveyor was apparently unaware of these circumstances, and had also not reviewed the reefer data, when, in an entirely conclusory fashion, he opined that, "[b]ased on the information gathered and conditions found it is our opinion that the plantains were subjected to temperatures higher than the requested temperatures while in the care and custody of the ocean carrier." (Plaintiff's Survey Report, Exhibit D to Tagliareni Declaration, at 3).

Given the time between delivery of the cargo to plaintiff's trucker and the documentation of the damage at survey, and given what we now know of the care that was afforded to the cargo during this post-discharge period, it is apparent that plaintiff's COGSA burden of establishing that the damage occurred before vessel outturn also has not, and can not, be met here.

**POINT II.**      **CSAV HAS ESTABLISHED ITS DUE DILIGENCE AS A MATTER OF LAW.**

With respect to reefer shipments, as the court in Pueblo Int'l, Inc. v. Puerto Rico Marine Mgmt., Inc., Navieras De Puerto Rico, 1989 A.M.C. 466 (D.P.R. 1989), held:

> the Bill of Lading . . . permits a variance within the refrigeration unit of plus or minus [five] 5 degrees Fahrenheit from the requested carrying temperature. We do not believe, as Pueblo argues, that these provisions are unreasonable or violative of COGSA. On the contrary, we find them a rather reasonable response to the very real potential for uncontrollable temperature fluctuation inherent in the shipping of refrigerated produce. Were a variance of plus or minus [five] 5 degrees not permitted, Navieras would be subject to an impossible burden which

> would compel it to keep and control the
> temperature in the reefer units with an accuracy
> which is not yet technologically possible, even
> with the existence of sophisticated equipment.

Id. at 467-68; see also, Sun Co. v. S.S. Overseas Arctic, 1993

A.M.C. 2163, 2165 (E.D. La. 1993); Florencio Roman, Inc. v. Puerto

Rico Maritime Shipping Auth., 454 F. Supp. 521, 1980 A.M.C. 2261

(D.P.R. 1978) (holding "the plus or minus [five] 5 degree rule"

applicable to ocean transport of containerized fruit), aff'd, 614

F.2d 9 (1st Cir. 1980).

And, even without such bill of lading terms, the court in

Banana Serv's, Inc. v. M/V Fleetwave, 911 F.2d 519, 1991 A.M.C.

439 (11th Cir. 1990), found that vessel temperature readings

within this range constituted "proof of due care on the part of

the carrier." Id. at 443; see also, Manhattan Fruit Export Corp.

v. Royal Netherlands S.S. Co., 271 F.2d 607, 609 (2d Cir. 1959)

(Hand, J.) ("[W]e feel obliged to hold that it was 'clearly

erroneous' to conclude that the [temperature recordings] were not

reliable, and that they discharged the burden of proof that

1304(2)(q) of Title 46, imposed upon the defendant."), cert.

denied, 363 U.S. 812, 80 S. Ct. 1249, 4 L. Ed. 2d 1154 (1960);

Amorex Marine, Inc. v. M/V Maersk Mango, 1991 A.M.C. 2941 (S.D.

Tex. 1991); Roman Crest Foods, Inc. v. S.S. Delta Columbia, 574 F.

Supp. 440, 1984 A.M.C. 1509 (S.D.N.Y. 1983).

In the matter sub judice, the CSAV bill of lading called for

the cargo to be carried at 7.2° Centigrade, with a ventilation

setting of 50%. (Bill of Lading, Exhibit C to Tagliareni

7

Declaration).    And    the    bill    of    lading    provided    that    "[t]he

Merchant    agrees    that    when    a    temperature    is    noted    on    the    face

hereof . . . the Carrier will exercise reasonable care to maintain

the ambient temperature in the refrigerated chamber of container

plus or minus 2°C."  Id. at ¶ 12.

The data retrieved from the reefer unit and the ventilation

settings confirm that the shipper's requested carrying temperature

and ventilation percentage were maintained throughout the period

of CSAV's custody of the cargo.  (Expert Opinion, Exhibit E to

Tagliareni Declaration, at 5 ("[T]he DAT and RAT during ocean

transit were within normal parameter and do not suggest mal-

function and/or interruptions."); Reefer Data, Exhibit F to

Tagliareni    Declaration;    Ventilation    Settings,    Exhibit    G    to

Tagliareni Declaration; Plaintiff's Survey Report, Exhibit D to

Tagliareni Declaration, at 2-3 ("Mr. Machuca stated that the

refrigeration unit was running at the time of delivery.    The

requested    shipping    temperature    was    7.2°C    (45°F)    and    the    set

temperature on the refrigeration unit was 7.2°C (45°F) centigrade

[sic.].  An actual temperature of the unit interior was not taken,

but reportedly felt similar to other shipments (45°F)."); accord

Machuca Deposition, Exhibit J to Tagliareni Declaration,  at 77-

78).

Thus,  even  assuming  arguendo,  plaintiff  could  somehow  meet

its  prima facie  COGSA  burden  on  these  facts,  this  evidence

conclusively establishes that the proper carrying temperature was

maintained throughout the voyage, and that the full measure of CSAV's contractual and/or COGSA "q" clause obligation was carried out properly as a matter of law.

**POINT III.    THE ABOVE NOTWITHSTANDING, JUDGMENT SHOULD BE GRANTED TO CSAV ON ITS COUNTER-CLAIM FOR OUTSTANDING OCEAN FREIGHT.**

It is well-settled that the obligation to pay freight is independent of any damage claim the shipper may have, and the carrier is entitled to collect its charges upon delivery, without set-off, even where the goods are allegedly mishandled. See, Metallgesellschaft A.G. v. M/V Captain Constante, 790 F.2d 280, 282-83 (2d Cir. 1986); Maersk, Inc. v. Royal Brands Int'l, 98 Civ. 8396 (LAP), 2001 U.S. Dist. LEXIS 5308 (S.D.N.Y. May 1, 2001).

Plaintiff has acknowledged owing to CSAV $4,360 in outstanding ocean freight.  As to another $4,360 invoice, Mr. Machuca stated "I am pretty sure that there is only one open invoice but I [sic.] will check and confirm."  (Letter dated February 11, 2008, Exhibit I to Tagliareni Declaration).  At deposition on May 8, 2008, though insisting it must have been paid, Mr. Machuca still had no such confirmation.  (Machuca Deposition, Exhibit J to Tagliareni Declaration, at 99 ("A  Well, I moved my warehouse and all my paperwork is all over the place. I am still checking.").  And no other excuse has been put forward to explain plaintiff's failure to pay the freight.  Id. at 100 ("Q But aside from your belief that you may have paid one of those payments, is there any reason why the freight would not be paid on

these bills of lading?  A  No.").

    For the purpose of this motion, and in the interest of quickly resolving this matter, CSAV has accepted that plaintiff may be entitled to a $200 "VIP" deduction on each freight invoice, bringing the total owed to CSAV, exclusive of interest, to $8,720. (Tagliareni Declaration, at ¶ 16).  But  payment has not been received on either invoice.  Id.  That non-receipt shows clearly on CSAV's Statement of Account.  (Statement of Account, Exhibit H to Tagliareni Declaration).

    If it had been paid, moreover, plaintiff's bank records would have been produced in response to CSAV's repeated demands, and Mr. Machuca's mere statement that he thinks the invoice was paid is insufficient to overcome summary judgment.  See, Wells-Fargo Northwest Bank, Nat'l Ass'n v. Varig-S.A., No. 02 Civ. 6078 (JSR), 2003 U.S. Dist. LEXIS 10812, *13 (S.D.N.Y. Jun. 27, 2003) ("[D]efendant has provided nothing but a single conclusory statement – to wit, 'The note has been paid in full' . . . A mere conclusion is not sufficient to avoid summary judgment."); Marine Corp. Cargo, Inc. v. Raymur Corp., No. 97 Civ. 7593 (DGT), 1998 U.S. Dist. LEXIS 16298, *9 (E.D.N.Y. Aug. 31, 1998) ("The court recognizes that defendant maintained poor accounting records. Nevertheless, it is clear that, if defendant had made payments for the accounts claimed open, it could have collected some supporting evidence from its banks or elsewhere."); American Nursing Home v. Local 144, No. 89 Civ. 1704 (DNE), 1992 U.S. Dist. LEXIS 2399,

**10-11 (S.D.N.Y. Mar. 4, 1992) ("The Employers cannot defeat defendant's summary judgment motion for the wage increase for the period ending March 31, 1987, by relying exclusively on a single conclusory, unsubstantiated allegation of payment in their attorney's affidavit.    Conclusory allegations cannot defeat summary judgment.").

**CONCLUSION.**

WHEREFORE, CSAV urges the Court to grant the instant motion for summary judgment and award to CSAV such other and further relief as this Honorable Court may deem just and proper.

Dated:  New York, New York
        June 26, 2008

Respectfully submitted,

MAHONEY & KEANE, LLP
Attorneys for Defendant
COMPANIA SUD AMERICANA DE
VAPORES S.A.

By:  _____
Garth S. Wolfson (GW 7700)
11 Hanover Square, Tenth Floor
New York, New York 10005
(212) 385-1422